NUMBER 13-10-00159-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

WOMEN’S CLINIC OF
SOUTH TEXAS,                                           Appellant,

 

v.

 

SENAIDA ALONZO,                                                                
 Appellee.

                                                                                                                     
  

 

On appeal from the 93rd
District Court 

of Hidalgo County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Perkes 

Memorandum Opinion by
Justice Rodriguez

 

            Appellant Women's Clinic of South Texas (the
Clinic) challenges the trial court's denial of its motion to dismiss in this
health care liability claim brought by appellee Senaida Alonzo.  By three
issues, the Clinic argues that:  (1) the trial court abused its discretion in
denying its motion to dismiss because Alonzo's expert report lacked the
requisite elements to satisfy section 74.351 of the civil practices and
remedies code, see Tex. Civ.
Prac. & Rem. Code Ann. §74.351(a)-(b), (r)(6) (Vernon Supp. 2010);
(2) a thirty-day extension to cure the report is unavailable to Alonzo despite
the trial court's purported withdrawal of its earlier thirty-day extension; and
(3) the trial court erred in failing to award attorneys' fees and costs to the
Clinic.  See id. § 74.351(c).  We affirm, in part, and reverse and render,
in part.

I. 
Background

 

            On April 23, 2009, Alonzo filed suit against
the Clinic, Fernando J. Otero, M.D., Orestes Molina, M.D., and Heriberto
Rodriguez-Ayala, M.D. claiming negligence in connection with their alleged
failure to diagnose and treat her ectopic pregnancy before emergency surgery
required the removal of her left fallopian tube and ovary.[1] 
The Clinic answered on May 13, 2009.  On August 17, 2009, Alonzo served the
Clinic with her expert report, authored by Margaret Thompson, M.D., J.D..[2] 
On August 28, 2009, the Clinic filed its objections to the expert report and its
first motion to dismiss, arguing that Alonzo's expert report failed to set out
the required standard of care, breach, and causation elements, that Dr.
Thompson's qualifications to author an expert report as to the Clinic were not
established, and that the report did not contain Dr. Thompson's curriculum
vitae (CV).

            The trial court held a hearing on the
Clinic's motion to dismiss on October 28, 2009.  At the hearing, the parties
acknowledged that Alonzo had since provided the Clinic with a copy of Dr.
Thompson's CV.  The parties also briefly discussed the remaining inadequacies
of the report, as alleged by the Clinic, but the trial court reserved ruling on
the motion, instead asking the parties to provide briefing on the issue of the
adequacy of Alonzo's expert report.  The Clinic filed its letter brief on
November 3, 2009.  

On November 5, 2009, the trial court
issued an order denying the Clinic's motion to dismiss and granting Alonzo a
thirty-day extension "to cure the report's deficiency"; the order
further stated that Alonzo was "granted thirty (30) days from the date of
this order to produce a report that attempts to cure the deficiencies in
[Alonzo]'s current expert report."  On November 23, Alonzo filed a motion
to correct entry of the trial court's November 5 order, in which Alonzo argued
that

[T]he
[extension] Order reflects in global, vague terms, that [Alonzo] is to prepare
a new expert report.  However the rules clearly require that the Court must
first point out specific deficiencies in the current report.  Pursuant to CPRC
§ 74.351(c), the Court must first enter a finding that specific elements of the
report are found to be deficient.  The order as submitted by [the Clinic's
counsel] failed to set forth any specific deficiencies to be cured.  No finding
that any specific elements of [Alonzo]'s expert report are deficient has been
made by this Court.

 

            As per
CPRC § 74.351(l), the Court can only find specific elements are
deficient if the Court first finds that it appears to the Court that, after
hearing, that the report does not represent an objective good faith effort to
comply with the definition of an expert report.  No such finding has been
entered by this Court.

 

            WHEREFORE,
PREMISES CONSIDERED, Plaintiff requests the Court to strike the Order as submitted
by [the Clinic's counsel] and to enter an order in the future regarding
correcting deficiencies in the expert report after such time as there is a
proper hearing and the Court makes a specific finding of what, if any, specific
deficiencies must be cured.

 

It is undisputed that Alonzo did not serve an amended
report in the thirty-day extension period.

            On December 17, 2009, the Clinic filed its
second motion to dismiss Alonzo's claims for failure to serve an expert report
that complied with the requirements of section 74.351.  On March 10, 2010, the
trial court held a hearing on the Clinic's second motion to dismiss.  At the
hearing, counsel for Alonzo suggested to the trial court that, at its October
28, 2009 hearing, the court had actually found that Alonzo's expert report was
not deficient and, as such, inadvertently signed the November 5, 2010 order
granting the thirty-day extension.  The trial court then orally adopted
counsel's suggestion and set aside its November 5 order.[3] 
On April 15, 2010, the trial court issued a written order in which it (1)
granted Alonzo's motion to correct entry of the November 5 order, (2) withdrew
its November 5 order granting Alonzo a thirty-day extension to amend her expert
report, and (3) denied the Clinic's August 28, 2009 motion to dismiss.  This
interlocutory appeal followed.  See Tex.
R. App. P. 28.1; Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(9) (Vernon 2008) (authorizing an
interlocutory appeal of the denial of a motion to dismiss filed under section
74.351(b)).

II. 
Standard of Review

 

            We review a trial court's decision on a
motion to dismiss under section 74.351 of the civil practice and remedies code
for abuse of discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex.
2006); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 878 (Tex. 2001).  The trial court abuses its discretion if it acts
unreasonably or arbitrarily or without reference to any guiding rules or
principles.  Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003).

III. 
Discussion

 

            By three issues, the Clinic challenges the
trial court's denial of its motion to dismiss Alonzo's health care liability
claims.

A. 
Availability of Thirty-Day Extension

            Because the availability of the thirty-day
extension for amending Alonzo's expert report will affect our disposition, we
first address the Clinic's second issue.  By that issue, the Clinic argues
that, despite the trial court's purported withdrawal of its November 5, 2009
order, a thirty-day extension is unavailable to Alonzo because Alonzo relied on
the extension to serve Dr. Thompson's CV on the Clinic outside the 120-day
deadline.  We agree.

            At the March 10, 2010 hearing on the Clinic's
second motion to dismiss, counsel for Alonzo attempted to persuade the trial
court that, at the October 28, 2009 hearing, the court had, in fact, concluded
that Alonzo's expert report was sufficient.  Counsel further took the position
that the trial court was required to make findings of specific deficiencies in
the report before it could grant a thirty-day extension.  For these reasons,
counsel argued that the trial court's November 5, 2009 order allowing Alonzo a
thirty-day extension was mistakenly issued.  The trial court appeared to adopt
all of counsel's suggestions.  We are troubled by counsel's assertions at the
March 10 hearing for several reasons.  

First, the trial court's November 5
order granting Alonzo a thirty-day extension "to cure the report's deficiency,"
plainly acknowledged the deficiency in Alonzo's expert report.  (Emphasis added.) 
Second, after reviewing the record from the October 28 hearing, it is clear to
this Court that the trial court did not broadly conclude that Alonzo's expert
report was sufficient.  The only aspect of the report discussed in detail at
the October 28 hearing was the absence of Dr. Thompson's CV.  The Clinic
asserted that it did not receive the CV within the 120-day deadline.  And
although Alonzo refuses to concede on appeal that her timely expert report did
not contain Dr. Thompson's CV, statements made by Alonzo's counsel at the
October 28 hearing indicated an acknowledgement that the CV was not included in
the timely-served expert report—in particular, Alonzo's counsel asked the court
for "the additional 30 days as to the curriculum vitae."  Finally,
neither the rules nor chapter 74 of the civil practice and remedies code
require the trial court to clearly specify deficiencies in the current report
or find that specific elements are deficient before granting a plaintiff the
thirty-day extension available under section 74.351(c), a rule of law that was
advanced by Alonzo both in her motion to correct entry of the trial court's
November 5 order and in her argument to the trial court at the March 10
hearing.  

Under section 74.351, a health care
liability plaintiff is allowed one thirty-day extension to cure deficiencies in
her otherwise timely-served expert report.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).  Alonzo
requested her extension at the October 28, 2009 hearing, the trial court
granted it in its November 5, 2009 order, and Alonzo took full advantage of it
to produce Dr. Thompson's CV outside the 120-day deadline for serving her
expert report.  Without the extension, Alonzo's expert report would have been
patently deficient because it lacked Dr. Thompson's CV.  See id. §
74.351(a).  Further, in its objections and motion to dismiss, the Clinic
specified the other alleged deficiencies in the report, namely that the expert
report failed to set out the required standard of care, breach, and causation
elements and that Dr. Thompson's qualifications to author an expert report as
to the Clinic were not established.  Thus, Alonzo was on notice of the
potential deficiencies in her report and acted at her own risk in failing to
remedy those alleged deficiencies by serving an amended report within the
thirty-day extension period granted by the trial court.  For these reasons, we
conclude that the trial court was without authority to withdraw its November 5,
2009 order because Alonzo already availed herself of the one-time thirty-day
extension available to her under section 74.351.  She is not entitled to
another.  See id. § 74.351(c).  The Clinic's second issue is sustained.[4]

B. 
Deficiency of the Expert Report

            By its first issue, the Clinic argues that
Alonzo's expert report is deficient because it does not set forth the
applicable standard of care and breach or explain the causal connection between
the Clinic's breach and Alonzo's injuries.  Under section 74.351 of the Texas
Civil Practice and Remedies Code, a claimant must "serve on each party or
the party's attorney" an expert report and curriculum vitae "not
later than the 120th day after the date the original petition was filed." 
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a).  An expert report is "a written report by an expert that
provides a fair summary of the expert's opinions . . . regarding applicable
standards of care, the manner in which the care rendered . . . failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed."  Id. § 74.351(r)(6).

In our review of the expert report, we
are limited to the four corners of the report in determining whether the report
manifests a good faith effort to comply with the statutory definition of an
expert report.  Palacios, 46 S.W.3d at 878; see Tex. Civ. Prac. & Rem. Code Ann. §
74.351(l) (requiring that the trial court "grant a motion
challenging the adequacy of the expert report only if appears to the court,
after hearing, that the report does not represent an objective good faith
effort to comply" with the statutory definition).  The report "need
not marshal all the plaintiff's proof."  Palacios, 46 S.W.3d at
878; Jernigan, 195 S.W.3d at 93.  If the expert report puts the
defendant on notice of the specific conduct complained of and provides the
trial court a basis on which to conclude the claims have merit, the report
represents a good faith effort to comply with the statute.  Palacios, 46
S.W.3d at 879.

Here, Alonzo's expert report
meaningfully addresses only the actions and decisions of Drs. Otero, Molina,
and Rodriguez-Ayala.  The only specific reference in Dr. Thompson's report to
the Clinic was that it "failed to meet the standard of care by refusing to
see Ms. Alonzo on 4/18/07."  But the report is wholly devoid of any
standard of care applicable to the Clinic.  Neither does the report include any
analysis of the causal relationship between the breach alleged—apparently, the
refusal of the Clinic to give Alonzo an appointment on April 18, 2007—and the
injuries suffered by Alonzo.  The report is therefore deficient as to the
direct liability of the Clinic for Alonzo's injuries as it fails to set forth
the standard of care or causation elements.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

However, Alonzo argues that because she
also sued the Clinic under the theory of respondeat superior for the actions of
Drs. Otero, Molina, and Rodriguez-Ayala, whom Alonzo alleged were employees of
the Clinic, her expert report that purportedly sufficiently sets forth the
standard of care, breach, and causation elements as to the doctors is also
sufficient as to the Clinic.  Alonzo first raised her vicarious liability claim
in her amended petition, filed September 4, 2009.  In her amended petition,
Alonzo alleged that Drs. Otero, Molina, and Rodriguez-Ayala were employees of
the Clinic.  Alonzo alleged that the Clinic "provided medical service by
its . . . employees" to Alonzo and that all such . . . employees were
acting within the course and scope of their employment" with the Clinic. 
Alonzo then alleged that the Clinic "is liable . . . for the negligence of
its employees under the doctrine of Respondeat Superior."  In the record
before us on appeal, we find neither an amendment by the Clinic to its August
28 objections and motion to dismiss or any additional objections or motion to
dismiss addressing the vicarious liability theory advanced in Alonzo's amended
petition.

Dr. Thompson's report specifically
addresses the conduct of Drs. Otero, Molina, and Rodriguez-Ayala, whom Alonzo
alleged in her amended petition to be employees of the Clinic and for whose
actions Alonzo alleged the Clinic to be liable under the theory of respondeat
superior.  A health care liability plaintiff fulfills her expert report
requirement as to a defendant hospital, clinic, or other facility alleged to be
vicariously liable if the report is adequate as to the employees alleged to be
directly liable.  See Gardner v. U.S. Imaging, Inc., 274 S.W.3d 669,
671-72 (Tex. 2008) (per curiam) (holding that, if a defendant surgical
facility's liability is vicarious, the expert report requirement is fulfilled
as to the surgical facility if the report is adequate as to the employees
alleged to be directly liable); RGV Healthcare Assocs., Inc. v. Estevis,
294 S.W.3d 264, 273 (Tex. App.–Corpus Christi 2009, pet. denied) ("When a
plaintiff's claim against a hospital is not for direct negligence, but is based
on the conduct of an employee through the doctrine of respondeat
superior," the report "is sufficient as against the hospital to
satisfy the expert report requirement for the vicarious liability claims"
if "the report identifies conduct by the hospital's employee, the hospital
is implicated, and . . . the report adequately addresses the standard of care
applicable to the employee, how the employee breached the standard of care, and
that the breach caused the plaintiff's injury."); Univ. of Tex. Med.
Branch v. Railsback, 259 S.W.3d 860, 869 (Tex. App.–Houston [1st Dist.]
2008, no pet.) (same); Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d
877, 879 (Tex. App.–Dallas 2006, no pet.) (holding that "because
appellants were not alleging UT Southwestern was directly negligent, the expert
report was not required to mention UT Southwestern by name").  But we need
not determine if Alonzo's report is actually sufficient under section 74.351
because the Clinic does assert on appeal that Dr. Thompson's report was
deficient in explaining how the actions and decisions of its alleged employees
were negligent; the Clinic therefore failed to present reversible error
regarding the expert report as it relates to Alonzo's vicarious liability
claim.  See Dale, 188 S.W.3d at 879 (holding that "because
[the defendant hospital] does not assert the expert report was defective in
explaining how the conduct of each of its [employee] residents constituted
negligence, we conclude [the hospital] does not present reversible
error"); see also Tex. R.
App. P. 38.1(i).  Alonzo fulfilled the expert report requirement as to
her vicarious liability claim against the Clinic by serving a report addressing
the conduct of the Clinic employees alleged to be directly liable for Alonzo's
injuries.  See Estevis, 294 S.W.3d at 273 (holding that an expert report
in the vicarious liability context need not even mention the defendant hospital
or that the employees were acting in the course and scope of their employment
because the author of the report would not be qualified to draw such a legal
conclusion); Dale, 188 S.W.3d at 879 & n.1 (same).

In sum, because her expert report is
deficient as to the direct liability of the Clinic, we conclude that the trial
court abused its discretion in denying the Clinic's motion to dismiss with
regard to that claim.  No thirty-day extension is available because Alonzo
already availed herself of that extension through the trial court's November 5,
2009 order.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(c).  We sustain the Clinic's first issue
in so far as it relates to the direct liability claim.  However, because the
Clinic failed to assert and argue on appeal that the expert report was
deficient as to the actions and decisions of the defendant doctors, the Clinic
has presented no reversible error as to the vicarious liability claims asserted
by Alonzo in her amended petition, and the trial court did not abuse its
discretion in denying the Clinic's motion to dismiss in this regard.  We
overrule the Clinic's first issue in so far as it relates to the vicarious
liability claim.

C. 
Attorneys' Fees

            By its third issue, the Clinic argues that
the trial court erred in failing to award it attorneys' fees and costs.  However,
because Alonzo did timely serve an expert report in regard to a portion of her
claims, we need not address the Clinic's request for attorneys' fees at this
stage.  See Tex Civ. Prac. &
Rem. Code Ann. § 74.351(b) (stating that, if "expert report has not
been served within the period specified by [s]ubsection (a), the court, on the
motion of ... health care provider, shall . . . award[ ] . . . reasonable attorney's
fees"); see also Railsback, 259 S.W.3d at 870 n.14 (declining to
reach attorneys' fees issue in case where plaintiff timely served a report on
part of her vicarious liability claims).  The Clinic's third issue is
overruled.

IV. 
Conclusion

 

            We affirm the order of the trial court
denying the Clinic's motion to dismiss in so far as it relates to Alonzo's
vicarious liability claim against the Clinic.  We reverse the order of the
trial court denying the Clinic's motion to dismiss in so far as it relates to
Alonzo's direct liability claim against the Clinic and render judgment
dismissing that claim with prejudice.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

            

 

                                                                                                            NELDA
V. RODRIGUEZ

                                                                                                            Justice

 

Delivered
and filed the 

24th
day of March, 2011.









[1]
Drs. Otero, Molina, and Rodriguez-Ayala are not parties to this appeal.  





[2]
The deadline for serving the expert report was August 21, 2009, or 120 days
from the filing of Alonzo's original petition.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (Vernon Supp. 2010).





[3]
The trial court also indicated that it was not considering the Clinic's
December 17, 2009 motion to dismiss because it was striking its November 5
order that initially denied the Clinic's August 28, 2009 motion to dismiss.





[4]
As such, the trial court's November 5, 2009 order, which denied the Clinic's
first motion to dismiss, stands; it was the Clinic's second motion to dismiss,
which made the same arguments as its first motion, that was properly before the
trial court at the March 10, 2010 hearing; and the denial of that second motion
to dismiss is what we now address.